UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN RE: | ) | Case No. BK08-83016 |
| | ) | |
| TRI-STATE FINANCIAL, LLC, | ) | Chapter 11 |
| d/b/a NORTH COUNTRY ETHANOL | ) | |
| | ) | |
| Debtor. | ) | |

## JOINT MOTION FOR ORDER AUTHORIZING CHAPTER 11 TRUSTEE TO ENTER INTO TOLL PROCESSING AGREEMENT AND REQUEST FOR EXPEDITED HEARING AND RULING

COME NOW Thomas D. Stalnaker, Chapter 11 Trustee ("Trustee"), Centris Federal Credit Union ("Centris"), Union Bank & Trust Company ("Union Bank"), Charles Clatterbuck ("Clatterbuck"), Linda Klaasmeyer ("Klaasmeyer"), and Theodore Hazer ("Hazer"), file this Joint Motion for Order Authorizing Chapter 11 Trustee to Enter Into Toll Processing Agreement and Request for Expedited Hearing and Ruling (the "Motion"), and in support thereof, state as follows:

1. This Court has jurisdiction over this Motion pursuant to 11 U.S.C. §§ 157 and 1334. Venue lies properly in this Court pursuant to 11 U.S.C. § 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157.

2. Tri-State Financial, LLC ("Debtor") filed this Chapter 11 proceeding on or about November 21, 2008, and Debtor remains in possession of its property, including an ethanol production facility located in Rosholt, South Dakota (the "Facility").

3. Trustee is the duly appointed Trustee in these Chapter 11 proceedings.

4. No creditors committee has yet been appointed in this case by the United States Trustee.

5. On or about July 13, 2009, the parties filed a Joint Motion for Order Authorizing Chapter 11 Trustee to Enter Into Ethanol Purchase and Sale Agreement (Filing No. 179) and Joint Motion for Order Authorizing Chapter 11 Trustee to Obtain Secured Super Priority Post-Petition

00387132.doc

Financing (Filing No. 182). The foregoing Motions (the "Post-Petition Financing Motions"), which are incorporated herein by this reference, proposed a transaction in which Noble Americas Corp. ("Noble"), an ethanol marketing company, would provide certain post-petition financing for the purpose of allowing the Trustee to operate the Facility. Centris, Union Bank, Clatterbuck, Klaasmeyer and Hazer proposed to provide additional post-petition financing for the same purpose. As stated in the Post-Petition Financing Motions, the post-petition financing would allow the Trustee to operate the Facility in order to increase the value and marketability of the Facility for the benefit of the estate. The ultimate goal is to sell the Facility to pay the creditors of the estate.

6. After a hearing conducted on July 28, 2009, this Court entered an Order Approving the Proposed Ethanol Purchase and Sale Agreement (See Filing No. 214) and a Final Order Authorizing Chapter 11 Trustee to Obtain Secured Super Priority Post-Petition Financing Pursuant to 11 U.S.C. § 364 (Filing No. 215) ("Final Order on Post-Petition Financing").

7. After entry of the foregoing Orders, the parties spent a substantial amount of time and effort attempting to negotiate the terms of a loan agreement with Noble for the post-petition financing arrangement approved by this Court. The parties experienced substantial delays in receiving the proposed loan documents from Noble and confirmation from Noble that the proposed post-petition financing had been approved by its various governing committees. Although the financing concept described in the Working Capital Line Term Sheet attached to the Motion filed at Filing No. 182 was acceptable to the parties, the loan documents prepared by Noble and presented to the parties contained terms and conditions that are not customary for debtor-in-possession financing and would not allow the Trustee to effectively operate the Facility for the benefit of the estate. The parties determined that, as a result of loan covenants being required by Noble, it was highly likely that Debtor would default under the terms of the loan documents even under normal operating conditions. The parties made diligent attempts to negotiate acceptable terms that would not result in subsequent defaults by the Debtor. However, the parties were unable to reach terms with Noble and have terminated negotiations with Noble.

8. As a result of delays in negotiating terms with Noble, the parties have been forced to deal with the possibility of losing additional employees due to the Trustee's lack of funds to pay the employees. The loss of the employees will cause additional expenses to be incurred to resume ethanol production operations. In order to address the foregoing issues, the parties determined that

00387132.doc

other sources of financing or operating structures should be considered if such financing or operating structures would offer terms more favorable than those being offered by Noble. The parties located another entity, Tenaska BioFuels, LLC ("TBF"), which is willing to structure a transaction to allow the Trustee to operate the Facility without the need for the post-petition financing being offered by Noble.

9. TBF is an affiliate of Tenaska, a national energy company with headquarters in Omaha, Nebraska which develops, constructs, owns and operates non-utility electric generation and cogeneration plants. It also markets natural gas, electric power and biofuels, and provides risk management services.

10. TBF is proposing a toll processing arrangement for the operation of the Facility, terms of which are more particularly described in the toll processing term sheet ("Toll Processing Term Sheet") attached hereto as Exhibit "A" and incorporated herein by this reference.

11. Under the toll processing arrangement, TBF will purchase the corn and other materials necessary for production of ethanol, and will own and market the ethanol that is produced at the Facility. TBF will own all materials necessary for the production of ethanol and all ethanol and by-products created in the production process. Debtor, through a Management Agreement with Innovative Concepts of Ethanol, Inc. ("ICE"), will provide processing services and facilities for the production of the ethanol. Debtor will be paid fee for the services and facilities provided for the production of ethanol and TBF will be paid a marketing fee for marketing the ethanol produced at the Facility. The remaining proceeds generated from the sale of the ethanol will be split between TBF and the Debtor as described in the attached Toll Processing Term Sheet. The terms described in the attached term sheet are standard in the industry for toll processing arrangements.

12. In order to operate under the Toll Processing arrangement described herein, Debtor will utilize the Operating Line of Credit described in the Post-Petition Financing Motions, but will not need the Working Capital Line of Credit that was to be advanced by Noble. The super priority claims and liens in favor of Noble as set forth in the Final Order on Post-Petition Financing will not be necessary under toll processing arrangement being proposed by TBF. As a result, the Final Order can be vacated as it relates to the provisions granting Noble super priority claims and liens. However, since the Operating Line of Credit will be utilized for start-up expenses and on-going operating expenses, the terms of the Final Order on Post-Petition Financing as they relate to the

00387132.doc

super priority administrative claims and liens granted in favor of Centris, Union, Clatterbuck, Klaasmeyer and Hazer will remain unchanged, except to correct an error in Paragraph 10(ii) of the Final Order on Post-Petition Financing to now provide "(ii) the pre-petition lien on the Real Property Collateral held by Centris and Union."

13. The parties, in consultation with its proposed Manager, ICE, and its ethanol consultant, Jeff Kistner, have determined that the toll processing arrangement being proposed by TBF is superior to the post-petition financing being offered by Noble because it allows the Trustee to achieve the same result, i.e., resuming ethanol production operations at the Facility, with less risk and higher likelihood of success for the estate. The projections prepared by Kistner show that operations under the toll processing arrangement will produce a positive cash flow for the estate. The positive cash flow will allow operations to continue while a purchaser for the Facility can be located.

14. The relief requested by this Motion is that the Court enter an order (i) authorizing the Trustee to enter into a toll processing agreement with TBF containing terms consistent with those set forth in the Toll Processing Term Sheet, (ii) vacating those portions of the Final Order on Post-Petition Financing authorizing the Trustee to enter into agreements with Noble for Post-Petition Financing and granting super priority administrative claims and liens in favor of Noble, (iii) vacating that portion of the Order entered on July 30, 2009 (Filing No. 214) authorizing Trustee to enter into an Ethanol Purchase and Sale Agreement with Noble, and (iv) correcting Paragraph 10(ii) of the Final Order on Post-Petition Financing to read, "(ii) the pre-petition lien on the Real Property Collateral held by Centris and Union."

15. The parties are requesting the foregoing relief on an expedited basis because certain operating expenses including, but not limited to, unpaid and delinquent wages of employees at the Facility need to be paid immediately in order to allow ethanol production to be resumed under the toll processing arrangement.

WHEREFORE, the above named parties respectfully request the relief described above, and such other and further relief as the Court deems just and appropriate.

00387132.doc

DATED this 1st day of October, 2009.

            THOMAS D. STALNAKER, Trustee

           By: /s/ Robert J. Becker
             Robert J. Becker, #10258
             STALNAKER, BECKER & BURESH, P.C.
             P.O. Box 24268
             Omaha, Nebraska 68124
             (402) 393-5421
             His Attorney

           CENTRIS FEDERAL CREDIT UNION, Creditor

           By: */s/ Martin P. Pelster*
             Martin P. Pelster, #19223
             Robert M. Gonderinger, #16840
           Of CROKER, HUCK, KASHER, DeWITT,
             ANDERSON & GONDERINGER, L.L.C.
             2120 South 72nd Street, Suite 1200
             Omaha, NE  68124
             (402) 391-6777

           UNION BANK & TRUST COMPANY,

           By: */s/ R.J. Shortridge*
             R. J. Shortridge, #20784
           Of PERRY GUTHERY HAASE & GESSFORD,
             LLO
             233 South 13th Street, #1400
             Lincoln, NE  68508
             (402) 476-9200

           LINDA L. KLAASMEYER,

           By: */s/ James B. Cavanagh*
             James B. Cavanagh, #106743
           Of LIEBEN, WHITTED, HOUGHTON,
             SLOWIACZEK & CAVANAGH, P.C.,
             L.L.O.
             2027 Dodge Street, Suite 100
             Omaha, NE  68102
             (402) 334-4000

00387132.doc

CHARLES CLATTERBUCK,

By:   _/s/ Larry A. Jobeun_
      Larry A. Jobeun, #19316
Of   FULLENKAMP, DOYLE & JOBEUN
      11440 West Center Road
      Omaha, NE  68144
      (402) 334-0700

THEODORE HAZER,

By:   _/s/ Emmett D. Childers_
      Emmett D. Childers, #10672
Of   HILLMAN FORMAN NELSEN CHILDERS
     & McCORMACK
      7171 Mercy Road, #650
      Omaha, NE  68106
      (402) 397-8051

**CERTIFICATE OF SERVICE**

I hereby certify that on October 1, 2009, I electronically filed the foregoing with the Clerk of the Bankruptcy Court using the CM/ECF system which sent notification of such filing to all parties who filed an appearance by electronic filing in this case, and I hereby certify that I have mailed by United States mail the foregoing to the following:

Tri-State Financial, LLC
d/b/a North Country Ethanol
3610 Dodge Street, Suite 212
Omaha, Nebraska 68131

          _/s/ Martin P. Pelster_

00387132.doc