UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN RE: | ) | Case No. BK08-83016 |
| | ) | |
| TRI-STATE FINANCIAL, LLC, | ) | Chapter 11 |
| d/b/a NORTH COUNTRY ETHANOL | ) | |
| | ) | |
| Debtor. | | |

**<u>AFFIDAVIT OF THOMAS D. STALNAKER IN SUPPORT OF MOTION FOR ORDER PURSUANT TO 11 U.S.C. §§ 105(A) AND 363, FED. R. BANK P. 6004, AND LOCAL R. BANK P. 6004-1 AUTHORIZING AND APPROVING THE SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS FREE AND CLEAR OF LIENS</u>**

STATE OF NEBRASKA    )
                     )
COUNTY OF DOUGLAS    )

Thomas D. Stalnaker, affiant, being first duly sworn on oath deposes and states:

1. I am the duly appointed, qualified and acting Chapter 11 Trustee in the above proceedings, and know the facts contained herein to be true of my own personal knowledge.

2. As the Chapter 11 Trustee, I am in possession of the Debtor's property, which includes an ethanol production facility located in Rosholt, South Dakota, along with the Equipment required therefor (the "Ethanol Plant").

3. The main asset of the Bankruptcy Estate is the Ethanol Plant.

4. I previously operated the Ethanol Plant, pursuant to orders of this Court, which authorized DIP financing and authorized the Trustee to enter into a Toll Processing Agreement with Tenaska BioFuels, LLC ("Tenaska"), as well as an operating agreement with Innovative Concepts of Ethanol, Inc. ("ICE").

5. On September 30, 2010, while operating the Ethanol Plant, I sought and obtained from the Court approval of Bidding Procedures for a possible sale/auction of the Ethanol Plant (Doc. 299 and 307). The Bidding Procedures required that interested parties submit sealed bids

to me by February 1, 2011.  I received no qualified bids pursuant to the Bidding Procedures. Thereafter, I continued to market a possible sale of the Ethanol Plant to potential buyers with no success and continued to operate the Ethanol Plant until March 17, 2011, at which time I determined the operation of the Ethanol Plant was no longer profitable under the arrangements set out in paragraph 4 above. On April 16, 2011, I shut down the operation of the Ethanol Plant.

   6. Since that time, I have marketed and sought out potential buyers for the Ethanol Plant, but no buyer with adequate ability to purchase the Ethanol Plant has come forward.  Either I or my counsel has responded to any and all potential buyer who has made inquiry of the availability of the plant.  Because of ongoing and continuing expenses to the Estate to maintain the Ethanol Plant in a shutdown mode, and limited estate assets, on June 30, 2011, I filed my Notice of Abandonment of the Ethanol Plant, effective July 21, 2011.  On July 20, 2011, I withdrew the Notice of Abandonment premised upon a general agreement with Red River Energy, LLC ("Buyer"), to purchase the plant for $4,500,000.00, including the payment of $25,000.00 by the Buyer herein to cover expenses while a purchase agreement was negotiated.

   7. During the time in which I have been operating and marketing the Ethanol Plant in an effort to sell same, I have received many inquiries from individuals and entities expressing interest in purchasing the Ethanol Plant. Through my consultant, Jeff Kistner, I set up a data room, in which the operational experience (sales, profit etc) of the plant could be determined. Several of those parties asked for permission to inspect the Plant in order to complete their "due diligence" and I have allowed them to do so. Despite these efforts, no party has made an offer to purchase the Ethanol Plant, without any contingency (other than approval of the Bankruptcy Court) but for the above-referenced Buyer.

8. Premised on the above and in consultation with my consultant, I believe the purchase price contained in the Purchase Agreement is fair and reasonable. Further, the purchaser has advised me that it intends to re-hire a significant number of former employees to operate the facility.

9. Centris Federal Credit Union has the first lien on the Plant and equipment, and the debt owed to Centris exceeds $20,000,000.00.

10. If the proposed Purchase Agreement is not approved, I will have no alternative but to immediately abandon the Plant because the estate is currently without sufficient assets to pay the administrative expenses, most of which were incurred through the operations of the Plant and/or maintenance of the Plant since its closure. In addition, if not approved, I believe, after discussions with my consultant, that after abandonment, absent a significant infusion of funds by the Debtor that the Plant's value will deteriorate further because of a lack of continued maintenance throughout the winter months.

Further affiant saith not.

/s/ Thomas D. Stalnaker
Thomas D. Stalnaker

SUBSCRIBED AND SWORN TO before me a Notary Public in and for the State of Nebraska this 12th day of August, 2011.

/s/ Cheri L. Sahm
Cheri L. Sahm